**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
Case No.: 0:21-cr-00174 (NEB/DTS)**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **DEFENDANT'S SENTENCING** |
| v. | ) | **MEMORANDUM** |
| | ) | |
| William Howard Proto, Jr., | ) | |
| Defendant. | ) | |
| | ) | |

**TO:   THE HONORABLE NANCY E. BRASEL, JUDGE OF MINNESOTA FEDERAL DISTRICT COURT; AND JOSEPH TEIRAB, ASSISTANT UNITED STATED ATTORNEY FOR THE PLAINTIFF UNITED STATES OF AMERICA.**

## INTRODUCTION

On August 11, 2021, a grand jury returned a two-count indictment against the defendant, William Howard Proto, Jr. ("Proto"). In it, the grand jury supported the charges of: 1) possession with intent to distribute 500 grams or more of a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A); and 2) felon in possession of a firearm in violation of 18 U.S.C. §§ 9229(g)(1), 924(a)(2).

On December 22, 2021, a grand jury returned a five-count superseding indictment against Proto. In it, the grand jury supported the charges of: 1) possession with intent to distribute 500 grams or more of a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A); 2) felon in possession of a firearm in violation of 18 U.S.C. §§ 9229(g)(1), 924(a)(2); 3) possession with intent to distribute 500 grams or more of a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A); 4) felon in possession of a firearm in violation of 18 U.S.C. §§ 9229(g)(1), 924(a)(2); and 5) possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 9249(c)(1)(A).

1

Proto tendered not guilty pleas to each count and demanded a jury trial. The district court obliged and presided over a jury trial on June 10, 2022. Initially, Proto persisted in his not-guilty pleas. But after the trial commenced, Proto relented on count four and elected to plead guilty. After a three-day trial, a jury returned guilty verdicts for the balance of the charges.

The Court ordered the preparation of a presentence investigation report ("PSR") and ordered the parties to appear for sentencing on November 15, 2022. U.S. Probation and Pre-trial Services filed its PSR on August 2, 2022. The PSR identified that the guideline range for Proto's convictions is 360 months to life. Through this sentencing memorandum, Proto respectfully requests this Court consider a variance from the Guidelines range identified through the PSR. As grounds, Proto offers the following.

## ANALYSIS

I.  **PURSUANT TO 18 U.S.C. § 3553(a), A PRISON SENTENCE OF 216 TO 240 MONTHS FOLLOWED BY FIVE YEARS OF SUPERVISED RELEASE CONSTITUTES A REASONABLE AND APPROPRIATE SENTENCE.[1]**

   a. Standard Of Review.

A variance of the Guidelines range is appropriate given the facts and circumstances developed in Proto's PSR. The Guidelines range is In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the federal sentencing guidelines advisory on the district courts. In *Booker*, the Court further held that judges are required to "take account of the Guidelines together with the other sentencing facts," and to "consider" the guidelines along with all other requisite factors. *Id*. at 224 (emphasis added).

---

[1] Proto recognizes that a three-year term of supervised release is the maximum allowable for counts two and four.

The properly calculated Guideline range is the starting point and initial benchmark in all sentencing proceedings. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). In *Gall*, the Supreme Court held that, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district court should then consider the factors enumerated by 18 U.S.C. § 3553(a). The district court must weigh these factors to determine whether the support the sentence requested by a party. In doing so, the district court may not presume the Guidelines range is reasonable. Instead, the district court must make an "individualized assessment based on the facts presented." *Id*.

18 U.S.C. § 3553(a) allows the district court to consider the particularized factors of the entirety of Proto's life—not just his criminal conduct. This approach is consistent with 28 U.S.C. § 991(b)(1)(B), which provides district courts with discretion to "maint[ain] sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices." Weighing the factors of 18 U.S.C. § 3553(a) against the backdrop of the discretion afforded by 28 U.S.C. § 991(b)(1)(B) supports a variance from the Guidelines range of 360 months-life to 216-240 months.

Specifically, the circumstances of this case coupled with Proto's history exemplify why the Supreme Court restored a district court's discretion "to consider every convicted person as an Individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. *Pepper v. United States*, 131 S.Ct. 1229, 1239-40 (2011) (internal quotations and citations omitted). The following relevant factors support why a 216-to-240-month range of incarceration is a punishment that is "sufficient, but not greater than necessary, to accomplish the sentencing goals advanced." *Kimbrough v. United States*, 552 U.S. 85, 111 (2007).

b.  <u>The Nature And Circumstances Of The Offense And The History And Characteristics Of The Defendant.</u>

The nature and circumstances surrounding Proto's convictions speak for themselves. The government convinced a jury that Proto possessed, with intent to distribute, over 500 grams of methamphetamine on two separate occasions. The government also convicted a jury that Proto possessed a firearm and for the benefit of drug trafficking. Proto does not dispute the severity of the facts underlying his convictions. However, Proto points to a few mitigating circumstances. First, as it relates to the first two counts of the indictment, law enforcement arrested Proto only after minding his own business in the parking lot of a hotel. Aside from having methamphetamine in the trunk of his vehicle, Proto was not selling drugs or engaged in drug-related activity. Second, Proto did not have a firearm on her person or in his actual possession. For all intents and purposes, luck catalyzed the first two counts of the indictment. If not for law enforcement conducting random registration checks in the hotel parking lot, this Court may have never seen Proto. Third, Proto was cooperative with law enforcement during his arrest. He neither assaulted nor threatened to assault the officers during their investigation.

As for the balance of the indictment, Proto understands the facts and circumstances underlying his convictions are relatively unequivocal. As he did during the first investigation, Proto was cooperative with law enforcement during his arrest. He did assault, threaten to assault, or run away from the officer during their investigation.

Unfortunately, Proto's life is plagued with bad luck. Proto's misfortune started when he was born. Proto is the son of alcoholics and intravenous drug users. Proto's first roles model, his mother and father, impressed upon him an image of normality for drug and alcohol use. Even though Proto's father eventually achieved sobriety, he took that new life and left to marry another woman. Proto's mother soon filled that father role with a friend who was released from prison and

4

needed a place to stay. This person, who ended up being Proto's stepfather, physically and emotionally abused Proto. To say that Proto's formative years doomed him to fail as an adult is an understatement.

Proto's involvement in the criminal justice started soon thereafter. Proto spent much of his adult life incarcerated. To add insult to injury, Proto also experienced the death of multiple family members. Proto never sought services to treat this trauma. Instead, he relied on the one thing that his formative years taught him—use drugs to treatment pain. But as Proto's friends and family recognize, Proto is full of potential when he his clean. Proto's wealth of support at home in the community is an asset and protective factor to mitigate his overall risk. The attached letters from Proto's friends and family prove that.

Perhaps the most indicative example of Proto's strong moral character was his decision to remain in Minnesota before his indictment. After his arrests, Proto was released from custody after posting bail in state court. Proto strongly suspected that the federal government was interested in indicting him, as the agents who arrested him included those from the Drug Enforcement Administration. Even in light of this exposure, Proto remained stateside to face the music—a decision that ultimately led to his extended incarceration.

Proto is paradigm for someone set up for failure. He experienced numerous episodes of trauma that remain professionally untreated. From an early age, Proto learned to manage the pain by using drugs. This behavior is what ultimately led to his demise. Fortunately, through an extended term of incarceration and treatment, Proto's trauma can be treated and his criminal thinking rehabilitated before integrating back into society. This need not take thirty years or a lifetime to accomplish.

c.  The Need For Sentence Imposed To Meet The Enumerated Objectives.

Incarceration, while an important tool in our criminal justice system, is not the best—or only—one. Proto does not dispute the seriousness of his offenses. But the conduct underlying Proto's convictions does not represent the most heinous way to commit the charged offenses. As explained above, Proto was not combative with law enforcement. He complied with officers' directives and did not attempt to flee them or the administration of justice.

Proto also does not dispute that a long stint of incarceration is justified to accomplish the objectives of 18 U.S.C. § 3553(a)(2)(A)-(D). But thirty years to life is *too* long. As stated in the PSR, "[A] sentence below the advisory guideline range of imprisonment would remain a severe graduated sanction and may still be sufficient to accomplish the goals of sentencing." [Doc. No. 92 at 30]. A sentence of 216-240 months is not only more than sufficient amount of time to account for Proto's criminal conduct, it affords him more than enough time to complete all of the relevant programming the Bureau of Prisons offers to its inmates in Proto's position. As Proto's brother stated, Proto needs "intensive recovery and treatment, not some 30-day program." [*Id*. at 20]. Proto endorses this statement.

Imposing an 18-20-year sentence sends a signal to the community that drug activity of this magnitude will not be tolerated. More importantly, this sentence puts Proto over the age of 60 upon release. This sufficiently protects the criminality of Proto's lifestyle and stymies his ability to return to the drug world after his release. Accordingly, the totality of the factors enumerated by 18 U.S.C. § 3553(a)(2)(A)-(D) support a sentence under 360 months to life.

d.  The Kinds Of Sentence And Sentencing Range.

Proto concedes that the facts and circumstances of his convictions require the imposition

6

of a lengthy prison sentence. Congress requires this Court to impose a sentence of at least fifteen years based on the mandatory minimums prescribed by law. However, one reason for Proto's Guideline range is the draconian ten-fold disparity "between the thresholds for methamphetamine mixture and actual methamphetamine." [*Id.* at 30]. If not for this disparity, Proto would be assigned a base level 34—not 38. This puts Proto at a Guidelines range of 235-293 months. Proto offers this disparity to support of his request for a variance from his Guidelines range of 360 months-life. Respectfully, a ten-year disparity seems particularly harsh based on a substance whose purity is rarely anything other than "pure."

## **CONCLUSION**

The totality of the relevant factors enumerated by 18 U.S.C. § 3553(a) support the conclusion that the Guidelines range of 360 months-life is unnecessarily harsh. Based on the foregoing facts and analysis, Proto respectfully requests the imposition of a 216-month to 240-month sentence. This represents a sentence sufficient, but not greater than necessary, to comply with the purposes of the sentencing statute.

RESPECTFULLY SUBMITTED,

**REPKA LAW, LLC**

Daniel Repka (MN Atty ID: 395015)
Attorney for Defendant
351 15th Avenue North
South St. Paul, MN 55075
(651) 395-7421
Daniel@RepkaLawLLC.com